UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ROBERT ALLEN REED et al., | CASE NO. 3:25-cv-05228-DGE |
| Plaintiffs, | ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT FOR STATE LAW DAMAGES (DKT. NO. 31) |
| v. | |
| COMMUNITY HEALTH CARE et al., | |
| Defendants. | |

This matter comes before the Court on Defendants' motion to dismiss (Dkt. No. 31) Plaintiffs' Second Amended Complaint (Dkt. No. 20). Plaintiffs filed a response to Defendants' motion on August 5, 2025. (Dkt. No. 33.) Defendants filed a reply on August 13, 2025. (Dkt. No. 34.) Upon thorough review of the briefing provided by the Parties, the Court GRANTS Defendants' motion and DISMISSES Plaintiffs' claims.

## I    PROCEDURAL BACKGROUND

This case arises out of a messy procedural history. Plaintiffs Robert Allen Reed ("Mr. Reed") and Trenna Cenise Reed ("Ms. Reed") filed a complaint in federal court ("Reed 1")

against Defendants Community Health Care ("CHC") and Dr. Janelle[1] Harro ("Harro") on March 31, 2025.  (Dkt. No. 5.)  Plaintiffs filed a separate complaint against Defendants in state court ("Reed 2") that was ordered removed; on June 10, 2025, the cases were consolidated. (Dkt. No. 18.)

After consolidation, Plaintiffs filed a new complaint entitled "Second Amended Complaint for state law damages." (Dkt. No. 20.)  Plaintiffs' Second Amended Complaint for state law damages asserts eleven causes of action.  (Dkt. No. 20.)  The first cause of action asserted is common law fraud for "knowingly falsif[ying] medical records" after a February 13, 2025, litigation hold.  (*Id*. at 11.)  The second cause of action asserted is for spoilation and record falsification.  (*Id*. at 11–12.)  Plaintiffs' third cause of action asserts violations of the Washington Consumer Protection Act, Washington Revised Code § 19.86, for falsely billing for a non-existent urine test, billing under improper Medicaid classifications, and falsifying lab tests and vaccine administrations.  (*Id*. at 12–13.)  Plaintiffs' fourth cause of action asserts denial of medical access under Washington Revised Code § 70.02.  (*Id.* at 13.)  Plaintiffs' fifth cause of action asserts defamation per se, based on Harro's communications to the Washington State Department of Children, Youth, and Families (DCYF) that were later referenced in communications with law enforcement.  (*Id*. at 15.)  Plaintiffs' sixth cause of action asserts reckless misrepresentation and abuse of position for Harro's allegations of abuse by Mr. Reed toward his children.  (*Id*. at 16–17.)  Plaintiffs' seventh cause of action asserts obstruction and record fraud under Washington Revised Code § 70.02.170.  (*Id*. at 17.)  Plaintiffs' eighth cause of action asserts a right to a forensic audit of CHC's records for post-litigation tampering and concealment.  (*Id.* at 18.)  Plaintiffs' ninth cause of action asserts an intentional infliction of

---

[1] Dr. Harro's name is spelled both Janelle and Janell in briefings.

emotional distress claim. (*Id*. at 18–19.) Plaintiffs' tenth cause of action asserts corporate

mismanagement and breach of administrative duties. (*Id*. at 19.) Plaintiffs' eleventh cause of

action asserts abuse of process by CHC. (*Id*. at 20.) Plaintiffs asserted this new complaint "does

not supersede or amend" their pending federal civil rights complaint. (*Id*. at 1.)

Mr. Reed also filed an additional complaint entitled "First Amended Complaint for

Damages under 42 U.S.C. § 1983" suing new Defendants Antonio Edwards, Ross Hiranaga, and

Cristina Tzintzun. (Dkt. No. 24.)[2] Mr. Reed's allegations include a claim Edwards retaliated

against him for declining entry by writing a false report, a claim Hiranaga and Tzintzun

unlawfully disseminated photographs of his daughter without legal or medical basis, and a claim

all three improperly identified him as a danger to staff on a DCYF watchlist. (*Id*.) Mr. Reed

asserted this complaint "supersedes only the [original] civil rights complaint" but not the Second

Amended Complaint for state law damages. (*Id*. at 1.)

The Court held a status conference with Parties on July 10, 2025 to address the fact the

case had two operative complaints. (Dkt. No. 29.) The Court instructed Defendants to respond

to Plaintiffs' complaint for state law damages first while noting eventually this matter would

need to have only one operative complaint. Defendants filed a motion to dismiss Plaintiffs'

complaint for state law damages on all counts. (Dkt. No. 31.)

## II    JURISDICTION

Plaintiffs first assert this Court has no jurisdiction over their Second Amended Complaint

for state law damages. (Dkt. No. 33.) Plaintiffs cite *Royal Canin U.S.A., Inc. v. Wullschleger*,

604 U.S. 22 (2025) for the proposition "once a plaintiff's operative complaint no longer asserts

any federal-law claims, a federal court loses supplemental jurisdiction and must remand any

---

[2] Ms. Reed is not a plaintiff in this complaint.

1    remaining state-law claims." (*Id.* at 1.)  Plaintiffs, however, misapply *Royal Canin*.  Plaintiffs'

2    case is not one where there are only state-law claims.

3            Instead, Harro is a "public health service employee" under 42 U.S.C. § 233 and was

4    acting as an employee of the United States of America during the alleged incidents.  This statute

5    therefore is what gives this Court the right, and in fact the obligation, to hear this case.  *See* 42

6    US.C. § 233(c) ("Upon a certification by the Attorney General that the defendant was acting in

7    the scope of his employment at the time of the incident out of which the suit arose, any such civil

8    action or proceeding commenced in a State court shall be removed without bond at any time

9    before trial by the Attorney General to the district court of the United States of the district and

10   division embracing the place where it is pending.").

11           Plaintiffs cite a "decision" that does ***not exist***, "*Flores v. United States*, 189 F.3d 477, 481

12   (9th Cir. 1999)," for the proposition § 233 does not create independent federal jurisdiction.  (Dkt.

13   No. 33 at 4.)  Plaintiffs have a significant pattern of using fictitious cases and have previously

14   been warned this misconduct can and will lead to sanctions.  (*See* Dt. No. 18 at 4, n.4.)  In fact,

15   this is not the first time Plaintiffs have had an issue with this very citation.  Plaintiffs previously

16   informed the Court that this case, while allegedly not fictitious, is irrelevant.  (*Reed et al. v.*

17   *United States of America*, 3:25-cv-05435-DGE, Dkt. No. 27 at 2.)

18           It is undisputed, therefore, that Plaintiffs provide no support for their claim § 233 does

19   not create independent federal jurisdiction.  More importantly, Plaintiffs' assertion is inconsistent

20   with the plain text of § 233.  42 U.S.C. § 233(c) authorizes removal upon certification that "the

21   defendant was acting in the scope of his employment at the time of the incident out of which the

22   suit arose."  Defendants provided this certification.  (Dkt. No. 18 at 4.)  Accordingly, *Royal*

23   *Canin* is inapplicable.  This Court has jurisdiction under § 233.

24

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED
COMPLAINT FOR STATE LAW DAMAGES (DKT. NO. 31) - 4

1    Plaintiffs also request, in the alternative, the Court sever their fifth, sixth, ninth, and

2  eleventh claims.  (Dkt. No. 33 at 4–5.)  Plaintiffs cite **two** decisions that do **not exist,** "*Abbey v.*

3  *United States*, 953 F.2d 639, 642 (9th Cir. 1991)," and "*Urrutia*, 44 F.3d at 1265," for the

4  proposition 28 U.S.C. § 2680(h) requires remand of these counts.  (*Id*.)  Plaintiffs provide no

5  other support for this proposition.  It is thus clear severance and remand of certain claims is not

6  required.  This Court can exercise jurisdiction over Plaintiffs' entire Second Amended Complaint

7  for state law damages and all related motions.

8                         **III    FACTUAL BACKGROUND**

9    Mr. Reed is the father of I.R. as well as three other minor children.  (Dkt. No. 20 at 4, 6.)

10  Ms. Reed resides with Mr. Reed.[3]  (*Id*. at 5.)  Harro is a licensed physician who was employed

11  by CHC during the relevant period.  (*Id*.)  The following facts are taken from Plaintiffs' Second

12  Amended Complaint for state law damages (Dkt. No. 20) and are accepted as true for the

13  purposes of Defendants' motion to dismiss.

14      a.  CHC's Provision of Medical Services

15    This dispute originates from I.R.'s January 5, 2023 doctor visit with Harro at CHC.  (*Id*.)

16  Harro saw I.R. for a rash in the gluteal region.  (*Id*.)  Harro described the rash as being

17  "nonspecific" and "not appearing infectious."  (*Id*.)  The visit was not a child abuse evaluation:

18  Plaintiffs assert it was billed as a routine office visit and neither Harro nor anyone else at CHC

19  included any abuse-related documentation.  (*Id*. at 5–6.)  Harro, however, identified evidence of

20

21

22  _____

[3] Ms. Reed "brings this action solely for injuries she personally sustained.  She is not asserting
23  claims on behalf of any other party."  (Dkt. No. 20 at 5.)  While it remains unclear if Ms. Reed
     has standing, the Court declines further analysis as all claims by all Plaintiffs have been
24  dismissed.

1  "nonaccidental trauma."  (*Id*. at 5.)  Harro further noted a "prior history of physical abuse of

2  children (via burns) by father."  (*Id*. at 6.)

3      Plaintiffs assert Harro did not communicate with Mr. Reed or seek his informed consent.

4  (*Id*.)  Harro made referrals to Mary Bridge Children's Hospital and DCYF with references to Mr.

5  Reed's history of "burning the children."  (*Id*.)  Plaintiffs assert Harro made these claims based

6  only on the hearsay of Mr. Reed's ex-wife and I.R.'s mother, Melissa Reed.  (*Id*.)  According to

7  Plaintiffs, Harro's comments were inconsistent with both prior records and her communication

8  with the child.  (*Id*.)

9      As a result of Harro's communications, I.R.'s case was escalated through DCYF.  (*Id*. at

10  6–7.)  CHC alleges Harro spoke to DCYF caseworker Cristina Tzintzun by phone on January 10,

11  2023.  (*Id*. at 7.)  However, Plaintiffs assert there is no record of this call on DCYF's call logs.

12  (*Id*.)  On January 10, 2023, Tzintzun emailed law enforcement offering to send a photograph of

13  I.R.'s genital area.  (*Id*. at 6–7.)  Plaintiffs assert there had been no disclosure of sexual abuse or

14  a documented law enforcement referral at this point.  (*Id*. at 7.)  On January 16, 2023, Plaintiffs

15  assert Mary Bridge Children's Hospital cleared Mr. Reed of child abuse concerns.  (*Id*. at 6.)

16  CHC did not note this clearance in I.R.'s chart.  (*Id*. at 7.)  On January 19, 2023, the Federal Way

17  Police Department opened an investigation into Mr. Reed.  (*Id*.)

18      Mr. Reed also asserts he received several other inconsistent medical records from CHC.

19  For example, on November 27, 2023, CHC reported they had collected a urine sample from

20  another one of his children, N.R., despite the fact Mr. Reed was with the child that day and had

21  not taken the child for a visit.  (*Id*. at 9.)  Additionally, on February 27, 2024, LabCorp provided

22

23

24

1  N.R.'s blood test results.[4]  (*Id*.)  However, Plaintiffs assert CHC's records showed no evidence a

2  blood draw occurred.  (*Id*.)  Finally, on March 13, 2025, CHC reported I.R. received an E. coli

3  swab.  (*Id*.)  However, LabCorp records identify this collection as occurring on March 14, 2025.

4  (*Id*.)

5         Plaintiffs also assert CHC also incorrectly billed I.R. and N.R.'s visits.  CHC used

6  diagnostic billing codes associated with the "Blind and Disabled" Medicaid classification

7  although neither child qualified for such a classification.  (*Id*. at 10.)

8     b.  <u>CHC's Provision of Medical Records</u>

9         On February 13, 2025, Mr. Reed informed CHC of his intent to sue for defamation,

10  HIPAA violations, and medical record tampering.  (*Id*. at 7.)  CHC acknowledged receipt of the

11  potential claim on February 18, 2025.  (*Id*.)  However, Plaintiffs assert on February 20, 2025,

12  CHC staff generated new vaccine administration entries and revised lab history reports for I.R.

13  and N.R.  (*Id*. at 8.)  These new entries lack standard NextGen electronic health record ("EHR")

14  watermarks.  (*Id*.)  The last known person to touch I.R.'s records was Mary Moore ("Moore") on

15  February 20, 2025 at 5:25 in the evening.  (*Id*.)  Plaintiffs assert CHC has refused to provide a

16  complete audit trail.  (*Id*.)

17         Then, on March 11, 2025, CHC attorneys communicated that all records had been

18  produced to Mr. Reed.  (*Id*.)  The following day, on March 12, 2025, Moore stated Provider

19  Treatment Agreements ("PTA") for the children had been dropped from the "original email."

20  (*Id*.)  However, Mr. Reed received records by certified mail, not via email.  (*Id*.)  The next day,

21  on March 13, 2025, Moore followed up and stated she had "forgotten to include" the PTAs in the

22

23  [4] Plaintiffs do not allege the specific relationship between LabCorp and CHC.  However,
    LabCorp appears to be the company responsible for running the laboratory tests CHC orders.
24  (Dkt. No. 20 at 9.)

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED
COMPLAINT FOR STATE LAW DAMAGES (DKT. NO. 31) - 7

1   original email.  (*Id*.)  Plaintiffs assert the metadata for these PTA documents identified the

2   documents as being created on March 13, 2025 using Adobe Distiller.  (*Id*. at 9.)  These

3   documents also lacked EHR watermarks and were absent from the audit log.  (*Id*.)  Additionally,

4   both documents were dated January 10, 2023 despite one having headers and footers labelled

5   January 5, 2023.  (*Id*. at 8.)

6       Finally, on April 8, 2025, CHC attorneys directed all legal communications to the U.S.

7   Department of Health and Human Services ("HHS").  (*Id*. at 10.)  HHS attorneys stated they had

8   not yet assumed representation or taken a position on the claims.  (*Id*.)  However, on April 28,

9   2025, CHC attorneys stated they would not produce the audit logs.  (*Id*.)

10                    **IV    DISCUSSION**

11   **A.  Legal Framework**

12       Defendants move to dismiss Plaintiffs' Second Amended Complaint for state law

13   damages (Dkt. No. 20) for failure to state a claim pursuant to Federal Rule of Civil Procedure

14   12(b)(6).  (Dkt. No. 31.)  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does

15   not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his

16   entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a

17   cause of action's elements will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)

18   (internal quotations and citations omitted).  Accordingly, "only a complaint that states a plausible

19   claim for relief survives a motion to dismiss."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

20   (2009).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere

21   possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader

22   is entitled to relief.'"  *Id*. at 679 (quoting Fed. Rule Civ. Proc. 8(a)(2)); *see also id*. at 678–79

23   ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime

24

1    of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing

2    more than conclusions.").

3    On a motion to dismiss for failure to state a claim, the Court must accept as true all well-

4    pleaded factual allegations and construe the allegations in favor of the non-moving party. *See*

5    *Wood v. City of San Diego*, 678 F.3d 1075, 1080 (9th Cir. 2012). However, "the tenet that a

6    court must accept as true all of the allegations contained in a complaint is inapplicable to legal

7    conclusions." *Iqbal*, 556 U.S. at 678. Complaints filed pro se are "to be liberally construed"; "a

8    pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal

9    pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v.*

10   *Gamble*, 429 U.S. 97, 106 (1976); *see also Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010)

11   ("*Iqbal* incorporated the *Twombly* pleading standard and *Twombly* did not alter courts' treatment

12   of pro se filings; accordingly, we continue to construe pro se filings liberally when evaluating

13   them under *Iqbal*."). "Unless it is absolutely clear that no amendment can cure the defect, [] a

14   pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend

15   prior to dismissal of the action." *Lucas v. Dep't of Corr*., 66 F.3d 245, 248 (9th Cir.

16   1995). However, leave to amend is properly denied if amendment would be futile. *See Ventress*

17   *v. Japan Airlines*, 603 F.3d 676, 680 (9th Cir. 2010); *Lipton v. Pathogenesis Corp*., 284 F.3d

18   1027, 1039 (9th Cir. 2002).

19   **B. Analysis**

20   a. <u>Plaintiffs' first cause of action asserting common law fraud does not show the</u>

21   <u>required elements.</u>

22   Plaintiffs' first cause of action alleges common law fraud by Defendants for "knowingly

23   falsif[ying] medical records." (Dkt. No. 20 at 11.) Specifically, Plaintiffs allege Defendants

24

1  modified documents on March 13, 2025 to make them appear as if they were created in January

2  and February 2023.  (*Id.*)

3          Common law fraud requires nine elements: (1) misrepresentation of an existing fact, (2)

4  materiality of the representation, (3) falsity of the representation, (4) the speaker's knowledge of

5  the falsity, (5) the speaker's intent that the information be acted upon by the plaintiff, (6)

6  plaintiff's ignorance of the falsity, (7) plaintiff's reliance on the truth of the representation, (8)

7  plaintiff's right to rely on the truth of the representation, and (9) damages.  *BP West Coast*

8  *Products LLC v SKR Inc.*, 989 F. Supp. 2d 1109, 1119–1120 (W.D. Wash. 2013).  Plaintiffs fail

9  to show they were ignorant of the falsities or relied on any misrepresentation.  Plaintiffs make

10  only the conclusory statement they "did rely on these documents and were misled to their

11  detriment."  (Dkt. No. 20 at 11.)  But Plaintiffs do not identify any alleged facts showing how

12  they were misled.  There is no allegation at any point they were not aware of the alleged

13  inconsistencies with the metadata and inconsistent dates on the PTA documents.  (*Id.*)

14          Plaintiffs also fails to identify how they suffered damages.  In conclusory fashion,

15  Plaintiffs assert that the alleged falsified documents "caused reputational harm, obstructed access

16  to care, and impaired Plaintiffs' ability to advocate for their family's medical and legal rights."

17  (*Id.*)  But no facts are alleged to support these conclusory assertions.  Accordingly, Plaintiffs'

18  first cause of action is dismissed without prejudice.

19          b.  Plaintiffs' second cause of action asserting spoliation and record falsification fails

20              because spoliation is not an independent cause of action under Washington law.

21          Plaintiffs' second cause of action asserts a claim for spoliation and record falsification

22  alleging Defendants "intentionally falsified records using Adobe Distiller to generate fraudulent

23  'Provider Treatment Agreement' (PTA) documents."  (Dkt. No. 20 at 12.)  This cause of action

24

1    fails as a matter of law because Washington does not recognize an independent cause of action

2    for spoliation.  *See Gordon v. Dep't of Social & Health Servs.*, No. CV-09-05069RBL, 2010 WL

3    11685266, at *9 –10 (W.D. Wash. Mar. 29, 2010); *Roe v. City of Spokane*, No. CV-06-0357-

4    FVS, 2008 WL 2705142, at *11 (W.D. Wash. July 9, 2008).  Plaintiffs themselves concede

5    "Washington does not recognize an independent tort for spoliation" and request only

6    "appropriate evidentiary sanctions, adverse inferences, and damages under the applicable state-

7    law theories."  (Dkt. No. 20 at 12.)  These requests for punitive remedies are improper in a

8    complaint.  Accordingly, Plaintiffs' second cause of action is dismissed with prejudice.

9               c.   Plaintiffs' third cause of action fails to state a cognizable claim under the

10                    Washington Consumer Protection Act.

11          Plaintiffs assert a cause of action under the Washington Consumer Protection Act

12    (WCPA) for improper billing.  (*Id*. at 12–13.)  Plaintiffs cite "*State v. Kaiser*, 198 Wn. App. 142

13    (2017)" for the proposition "a violation of [Washington Revised Code § 74.09.210] constitutes a

14    per se unfair or deceptive act under the Consumer Protection Act."  (*Id*.)  This case does ***not***

15    ***exist***.

16          The proper requirement under the WCPA requires a plaintiff to assert a prima facie case

17    showing: (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) public

18    interest impact, (4) injury to their business or property, and (5) causation.  *Ambach v. French*,

19    216 P.3d 405, 407 (Wash. 2009) (en banc).  Plaintiffs fail to show injury to their business or

20    property.  To the extent Plaintiffs allege any type of injury, it is personal injury.  (*See* Dkt. No.

21    20 at 13.)  Personal injury damages are not compensable damages under the Washington

22    Consumer Protection Act and do not constitute injury to business or property.  *Ambach*, 216 P.3d

23    at 408.  Nothing in Plaintiffs' briefing alleges any damages other than personal injury damages.

24

1  Accordingly, Plaintiffs' third cause of action for a violation of the Washington Consumer

2  Protection Act is dismissed without prejudice.

3        d.   Plaintiffs' fourth cause of action fails to state a claim under Washington Revised

4             Code § 70.02.

5        Plaintiffs' fourth cause of action asserts a claim under Uniform Health Care Information

6  Act for "delay[ing] or [refus]ing access to medical records in a calculated effort to obscure

7  liability, mislead regulators, and hinder timely correction of patient files." (Dkt. No. 20 at 13–

8  14.) Washington Revised Code § 70.02.080 identifies the requirements for providers who

9  receive a written request from a patient to examine or copy their health care information. It

10 appears Plaintiffs submitted a written request and Defendants allegedly denied at least their

11 request for access to audit logs. (Dkt. No. 20 at 10.)

12        Even assuming Plaintiffs submitted a proper request and Defendants denied access to

13 information covered by the Uniform Health Care Information Act, Plaintiffs fail to show

14 Defendants violated the law. Washington Revised Code § 70.02.090 permits health care

15 providers to deny access to health care information if "the health care provider reasonably

16 concludes" the knowledge would "be injurious to the health of the patient," "could reasonably be

17 expected to" violate patient confidentiality rules, "could reasonably be expected to cause danger

18 to the life or safety of any individual," "was compiled and is used solely for litigation, quality

19 assurance, peer review, or administrative purposes," or is "otherwise prohibited by law." Wash.

20 Rev. Code. § 70.02.090(1). Only where the information "would be injurious to the health of the

21 patient" or "could reasonably be expected to cause danger to the life or safety of any individual,"

22 must the provider take additional steps: namely, "permit[ting] examination and copying of the

23 record by another health care provider" and "inform[ing] the patient of the patient's right to

24

1    select another health care provider." Wash. Rev. Code. § 70.02.090(3). Because Plaintiffs do

2    not assert with any specificity under what provision of the statute they were denied access and

3    what errors they believe Defendants made, the Court dismisses Plaintiffs' fourth cause of action.

4    The Court must liberally construe Plaintiffs' complaint, but it may not allege information not

5    provided by the Plaintiffs.

6          Moreover, Plaintiffs' claim also fails because the purpose of Washington Revised Code

7    § 70.02 writ large is to "serve the interests of the patient, not the patient's representative." *Neel*

8    *v. Luther Child Center*, 989 P.2d 600, 603 (Wash. Ct. App. 1999). A hospital that fails to

9    comply with Washington Revised Code § 70.02.080 owes no duty to provide documents if a

10    nonpatient requesting the documents is only doing so for their own interests. *Id*. Parents seeking

11    to defend themselves against allegations of child abuse are acting only in their own interest and

12    not of their child. *Id*. Plaintiffs here concede they were seeking the children's medical records

13    to "respond to prior false allegations and clarify the medical record." (Dkt. No. 20 at 14.)

14    Plaintiffs make no allegations these attempts were to make informed decisions about their

15    children's health care. Even if Plaintiffs asserted plausible errors by Defendants, this would bar

16    recovery. Accordingly, Plaintiffs' fourth cause of action is dismissed without prejudice.

17         e.   <u>Plaintiffs' fifth cause of action for defamation per se is dismissed because the</u>

18               <u>only remedy for the alleged misconduct is through the FTCA.</u>

19          Plaintiffs' fifth cause of action asserts a per se defamation claim against Harro for her

20    communications about Mr. Reed submitted to Tzintzun and eventually the Federal Way Police

21    Department. (*Id*. at 15.) Plaintiffs cite two cases to support their claim: "*Right v. Breen*, 128

22    Wn. App. 104 (2005)" and *Caruso v. Local Union No. 690*, 107 Wn.2d 524, 529 (1987). (*Id*. at

23    16.) "*Right v. Breen*" does ***not exist***. And while *Caruso* does identify the four elements of

24

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED
COMPLAINT FOR STATE LAW DAMAGES (DKT. NO. 31) - 13

1    defamation (falsity, an unprivileged communication, fault, and damages), it does not address a

2    claim for defamation per se.

3         Ultimately, however, the standard for defamation per se is irrelevant.  The FTCA is

4    "exclusive of any other civil action or proceeding by reason of the same subject-matter against

5    the officer or employer (or his estate) whose act or omission gave rise to the claim."  42 U.S.C.

6    § 233(a).  The FTCA is the exclusive remedy for actions "aris[ing] out of the defendant's

7    performance of" medical functions, even if the specific misconduct did not occur "during the

8    provision of services."  *Friedenberg v. Lane County*, 68 F.4th 1113, 1118 (9th Cir. 2023).  A

9    claim for defamation is not permitted under the FTCA.  28 U.S.C. § 2680(h); *Kaiser v. Blue

10   Cross of California*, 347 F.3d 1107 (9th Cir. 2003).

11        Defendants argue, and the Court agrees, Harro's communications relating to Mr. Reed

12   arise out of her performance of her medical functions and a defamation claim based on such

13   conduct is barred by the FTCA.  (Dkt. No. 31 at 8–9.)  Washington law requires medical

14   practitioners with "reasonable cause to believe that a child has suffered abuse or neglect" to

15   report such incident.  Wash. Rev. Code § 26.44.030.[5]  The Ninth Circuit cited *Teresa T. v.

16   Ragaglia*, 154 F. Supp. 2d 290, 293, 300 (D. Conn. Jul. 16, 2001) for the proposition that a

17   "doctor's failure to report [] suspected child abuse was a 'related function' to the provision of

18   medical services" because "the duty to report was 'triggered' during a medical examination of

19   the child."  *Friedenberg*, 68 F.4th at 1129.  The same would be true in reverse: a medical

20

21   _____

     [5] Plaintiffs allege CHC did not make a "mandated report under [Washington Revised Code
22   § 26.44.030] but rather a discretionary referral used for an ulterior purpose."  (Dkt. No. 20 at 20.)
     However, Plaintiffs appear to limit this claim only to CHC and not Harro specifically as they
23   limit this claim to their discussion under count eleven and do not discuss it under counts five or
     six.  Moreover, this is a conclusory allegation without any factual basis identified as support for
24   such allegation.

     ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED
     COMPLAINT FOR STATE LAW DAMAGES (DKT. NO. 31) - 14

professional's decision to report also arises out of their status as a medical professional.

Plaintiffs' suit is therefore required to be brought as an FTCA suit, which bars claims for

defamation.

Plaintiffs' defamation claim is dismissed with prejudice.

f.  <u>Plaintiffs' sixth cause of action for reckless misrepresentation and abuse of position is also barred by the FTCA.</u>

Plaintiffs' sixth claim asserts reckless misrepresentation and abuse of position for Harro's "intentional misrepresentations and reckless escalation of child abuse allegations." (Dkt. No. 20 at 16.)  Plaintiffs try to separate this claim from "medical malpractice or standard-of-care deviation" claims.  (*Id*. at 17.)  Plaintiffs' efforts are unsuccessful.  For the reasons discussed dismissing Plaintiffs' fifth cause of action, Harro's action arose out of her duty as a medical professional.  The FTCA is Plaintiffs' only remedy and any claims based on misrepresentation are barred.  28 U.S.C. § 2680(h).  Accordingly, Plaintiffs' sixth cause of action is dismissed with prejudice.

g.  <u>Plaintiffs' seventh cause of action alleging obstruction and record fraud fails to state a claim under Washington Revised Code § 70.02.170.</u>

Plaintiffs' seventh cause of action asserts obstruction and record fraud in violation of Washington Revised Code § 70.02.170 for "intentionally obstructing Plaintiffs' lawful right to access medical records." (Dkt. No. 20 at 17.)  § 70.02.170 only provides civil remedies for violations of the Washington Uniform Health Care Information Act.  This is not in and of itself an independent cause of action.  Rather, Plaintiffs' seventh cause of action is simply a restatement of Plaintiffs' fourth of cause of action.  (*Id*. at 13–14.)  Plaintiffs' fourth cause of

1    action has been dismissed.  Accordingly, Plaintiffs' seventh cause of actions is dismissed with

2    prejudice as duplicative.

3            h.    Plaintiffs' eighth cause of action demanding a forensic audit and evidence

4                  preservation is an improper spoliation claim.

5            Plaintiffs' eighth cause of action requests "the Court order a forensic audit of CHC's

6    Electronic Health Records (EHR) system." (*Id*. at 18.)  This is best construed as Plaintiffs'

7    requested remedy for their allegations of spoliation asserted in their second cause of action.

8    However, spoliation is not an independent cause of action, and this cause of action is not

9    cognizable.  It is at most a request that can be made in the litigation process, not a claim on its

10   own.  Accordingly, Plaintiffs' eighth cause of action for an audit request is dismissed with

11   prejudice.

12           i.    Plaintiffs' ninth cause of action fails to show the required elements for an

13                 intentional infliction of emotional distress claim.

14           Plaintiffs' ninth cause of action alleges intentional infliction of emotional distress (IIED)

15   from Defendants' "falsification of medical records, knowingly false reports of child abuse,

16   concealment of exculpatory findings, and obstruction of parental access." (*Id*. at 18.)  Even

17   assuming these allegations are not arising out of Harro's status as a medical professional and

18   required to be brought under the FCTA, the claim is unsuccessful.

19           Intentional infliction of emotional distress requires (1) extreme and outrageous conduct,

20   (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of

21   severe emotional distress.  *Trujillo v. Northwest Trustee Services, Inc.*, 355 P.3d 1100, 1110

22   (Wash. 2015).  This Court has previously held making a false report to police or social

23   workers—even when it leads to children being removed from the home—is not extreme and

24

outrageous conduct as required to constitute an IIED claim.  *Bergman v. Moto*, No. 22-cv-00161-RAJ, 2023 WL 4297656, at *2 (W.D. Wash. Jun. 30, 2023) ( "falsely reporting sexual assault" to law enforcement, even with malicious intent, did not support claim for intentional infliction of emotional distress); *Monaco v. Locke*, No. C05-178Z, 2006 WL 851249, at *5 (W.D. Wash. Mar. 31, 2006) (intentional infliction of emotion distress claim dismissed where maternal grandparents alleged social worker improperly relied on unfounded claims of abuse and neglect to deny placement of children with grandparents).  Accordingly, Plaintiffs' ninth cause of action for intentional infliction of emotional distress is dismissed without prejudice.

> j.   <u>Plaintiffs' tenth cause of action fails to state a cognizable claim for corporate mismanagement and breach of administration duties.</u>

Plaintiffs' tenth claim asserts a cause of action for corporate mismanagement and breach of administrative duties.  (Dkt. No. 20 at 19.)  Specifically, Plaintiffs allege CHC "permit[ed] non-clinical personnel . . . to generate medical documents that were backdated and untraceable via audit log," "fail[ed] to preserve electronic health records" despite "receipt of a legal notice," "allow[ed] legal counsel to certify record completeness on March 11, 2025, despite internal knowledge of omitted or altered files," and "obstruct[ed] access to GAP insurance contacts and audit logs."  (*Id*. at 19–20.)

Even assuming these allegations do not arise out of CHC's status as a public health service employee, the claim fails as a matter of law.[6]  "A cause of action for mismanagement belongs to the corporation.  Shareholders and creditors can bring a suit for mismanagement only derivatively, on behalf of the corporation."  *Biltmore Associates, LLC v. Twin City Fires Ins. Co.*,

---

[6] There is also a separate issue that Plaintiffs do not assert who at CHC permitted this alleged misconduct.

1    572 F.3d 663, 669 (9th Cir. 2009). Plaintiffs are suing on their own behalf, not on behalf of any

2    corporation.

3         Moreover, Plaintiffs had no right to medical records in this case. Plaintiffs sought

4    medical records to "respond to prior false allegations and clarify the medical record" (Dkt. No.

5    20 at 14), which means there was no obligation to provide their children's medical records to

6    them. *See Neel*, 989 P.2d at 603. Accordingly, Plaintiffs' tenth cause of action for corporate

7    mismanagement and breach of administrative duties is dismissed with prejudice.

8         k.   <u>Plaintiffs' eleventh cause of action fails to state a cognizable claim for abuse of</u>

9             <u>process.</u>

10        Plaintiffs' eleventh claim asserts abuse of process by CHC for "misus[ing] the child

11   protection reporting process to retaliate against [Mr. Reed] following his protected legal actions."

12   (Dkt. No. 20 at 20.) Plaintiffs allege the report was not a "mandated report under [Washington

13   Revised Code § 26.44.030] but rather a discretionary referral used for an ulterior purpose." (*Id*.)

14   Plaintiffs further allege this referral "relied solely on hearsay" and "was contradicted by

15   subsequent findings from Mary Bridge Children's Hospital." (*Id*.) Plaintiffs cite *Gem Trading*

16   *Co. v. Cudahy Corp.*, 603 P.2d 828 (Wash. 1979) for the proposition this "use of state

17   authority . . . absent clinical basis or urgent concern" constitutes abuse of process. (*Id*.)

18        But an abuse of process claim requires the abuse of *judicial* process. *See Gem*

19   *Trading*, 603 P.2d at 832 n.2 ("In abuse of process cases, the crucial inquiry is whether the

20   judicial system's process, made available to insure the presence of the defendant or his property

21   in court, has been misused to achieve another, inappropriate end."); *Anderson v. City of Bellevue*,

22   *Anderson v. City of Bellevue*, 862 F. Supp. 2d 1095, 1109 (W.D. Wash. 2012) (identifying the

23   requirements for an abuse of process claim as being (1) the existence of an ulterior purpose to

24

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED
COMPLAINT FOR STATE LAW DAMAGES (DKT. NO. 31) - 18

1   accomplish an object not within the proper scope of the process and (2) an act in the use of legal

2   process not proper in the regular prosecution of the proceedings).  Plaintiffs provide no factual

3   allegation identifying any individual at CHC who could have had an ulterior purpose.  Plaintiffs

4   also provide no facts alleging an abuse of judicial process.  Accordingly, Plaintiffs' eleventh

5   cause of action for abuse of process is dismissed without prejudice.

6               **V       LEAVE TO AMEND**

7           For any claims not dismissed with prejudice in this order, Plaintiffs are granted leave to

8   amend to attempt to cure the deficiencies identified in this order.  To clean up the docket and

9   ensure there is only **one** operative complaint, the new amended complaint shall include ALL

10  remaining claims (except those dismissed with prejudice) Plaintiffs seek to assert against

11  Community Health Care and Dr. Janelle Harro, which pursuant to 42 U.S.C. § 233(c) shall be

12  deemed a tort action brought against the United States if resulting from the performance of

13  medical or related functions.

14          The new amended complaint shall be filed no later than **November 4, 2025**.  The failure

15  to file a new amended complaint by such date that addresses the deficiencies identified in this

16  order will result in the dismissal of this matter without further leave to amend (or dismissal of

17  particular claims without further leave to amend).  Upon filing the new amended complaint,

18  Defendants may file a new motion to dismiss if they believe it appropriate.

19          **VI      PLAINTIFFS' AMENDED COMPLAINT FOR DAMAGES UNDER 42**

20          **U.S.C. § 1983 (DKT. NO. 24) IS DISMISSED WITHOUT PREJUDICE**

21          On July 2, 2025, Plaintiff Mr. Reed filed a "First Amended Complaint for Damages

22  under 42 U.S.C. § 1983" naming three Washington State child welfare officials.  (Dkt. No. 24.)

23  The claims arise out of these officials' investigation of possible child abuse by Mr. Reed.

24

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED
COMPLAINT FOR STATE LAW DAMAGES (DKT. NO. 31) - 19

1    Plaintiffs' first cause of action, "First Amendment Retaliation," is based on Edwards retaliating

2    against Plaintiff "by fabricating a false report" after Mr. Reed "assert[ed] his Fourth Amendment

3    rights and declin[ed] [a] warrantless entry" on January 7, 2023.  (*Id*. at 3–4, 6-7.)  Plaintiff's

4    second cause of action, "Fourteenth Amendment Violations: Privacy and Familial Integrity," is

5    based on allegedly unlawful "disseminat[ion] of explicit images of [Mr. Reed's] daughter

6    without a medical or legal basis."  (*Id*. at 4–7.)  The third cause of action, "Procedural Due

7    Process / 'Stigma Plus,'" is based on Mr. Reed being placed "on a DCYF watchlist as a danger to

8    staff based on false allegations."  (*Id*. at 7–8.)

9        This additional complaint was filed after consolidation (Dkt. No. 18) and without leave to

10   amend.  Moreover, the claims asserted are distinct and arise out of separate facts from the claims

11   previously asserted against Community Health Care and Dr. Janelle Harro.  The Court finds no

12   basis to allow the claims against the state officials to be joined in this litigation.  Accordingly,

13   Mr. Reed's "First Amended Complaint for Damages under 42 U.S.C. § 1983" (Dkt. No. 24) is

14   STRICKEN and the claims asserted therein are DISMISSED without prejudice.  To the extent

15   Mr. Reed seeks to assert claims against these three state officials, Mr. Reed is required to initiate

16   a separate lawsuit.

17           **VII    ORDER**

18       Accordingly, and having considered Defendants' motion, the briefing of the parties, and

19   the remainder of the record, the Court finds and ORDERS that Defendants' motion to dismiss

20   Plaintiffs' Second Amended Complaint (Dkt. No. 31) is GRANTED.  Plaintiffs are granted leave

21   to amend as identified in Section VI *supra*.

22       Plaintiff Mr. Reed's complaint under 42 U.S.C. § 1983 (Dkt. No. 24) is STRICKEN and

23   DISMISSED without prejudice for failing to seek leave to amend and as involving distinct issues

24

from the present case.  Mr. Reed may file separate litigation against those defendants as identified in Section VII *supra*.

Lastly, to address Plaintiffs' continued use of fictitious case law, Plaintiffs shall include on the last page of all future filings made in this case a signed certification that states: "**I have reviewed each court decision cited in this filing.  I certify that each decision cited is a valid decision that does exist.**"  Any pleading Plaintiffs file that cites a court decision but does not include this certification will be STRICKEN and not considered.

If Plaintiffs continue to cite to fictitious caselaw in any future pleadings, the Court will issue an order to show cause why this matter should not be dismissed as a sanction for seeking to mislead the Court.

Dated this 14th day of October, 2025.


David G. Estudillo
United States District Judge